718 A.2d 778

**Vernon WHITE, a Minor by His Natural Guardian, Louise PEARSALL, and Louise Pearsall, In Her Own Right, Appellees,**

**v.**

**SCHOOL DISTRICT OF PHILADELPHIA, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 13, 1998.

Decided Oct. 1, 1998.

Ireena Broadus, Suzanne McDonough, Co-Counsel, Philadelphia, for School Dist. of Philadelphia.

Michael I. Levin, for Amicus-Ins. Trust School Bd.

Jeffrey B. Solomon, Phhiladelphia, for Vernon White and Louise Pearsall.

Raymond M. Bily, Philadelphia, for Amicus-Pa. Trial Lawyers.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

The School District of Philadelphia appeals by allowance from an order of the Commonwealth Court reversing the Court of Common Pleas of Philadelphia County's grant of summary judgment in favor of the School District. Because we conclude, as did the trial court, that the doctrine of governmental immunity bars the claims at issue, we reverse.

Following a motor vehicle accident in which minor Vernon White suffered serious injuries, Appellee Louise Pearsall, on behalf of her son Vernon and in her own right ("Pearsall"), initiated this civil action against the School District of Philadelphia (the "School District"), seeking compensatory damages and uninsured motorist benefits under the Pennsylvania Mo-

tor Vehicle Financial Responsibility Law, 75 Pa.C.S. § § 1701, *et seq.*

The School District filed a motion for summary judgment, asserting immunity from suit under the Political Subdivision Tort Claims Act, 42 Pa.C.S. § § 8541, *et seq.* (the "Tort Claims Act"). Citing this Court's decision in *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988), the trial court found that Pearsall's claims were barred by the Tort Claims Act and entered judgment in favor of the School District. On appeal, the Commonwealth Court reversed, concluding that the claims fell within the "motor vehicle" exception to the Tort Claims Act under the reasoning of its decision in *Vogel v. Langer*, 131 Pa.Cmwlth. 236, 569 A.2d 1047 (1990).

The undisputed facts are as follows. On January 23, 1992, Vernon White was a passenger on a school bus operated by the School District.[1] The driver, Melvin Lee ("Lee"), a School District employee, was preparing to deliver Vernon to his home and had activated windshield wipers due to rain. The bus traveled in the driving lane of Reed Street, a one-way street with parking lanes flanking both sides of the driving lane.[2] Parked cars blocked the parking lane to Lee's right; the parking lane to his left was unobstructed.

Vernon White lived on Taylor Street, which runs perpendicular to Reed Street and is not configured to accommodate delivery of students to the curb of the homes aligning the street. Under such circumstances, the "Pennsylvania School Bus Driver's Manual," a manual of procedures promulgated by the Pennsylvania Department of Transportation and used by the School District (the "School Bus Manual"), provides that a driver should escort the student to his or her front door, while an attendant supervises the students remaining on the bus. Where no attendant is present and a student must cross a

1. The school bus carried students classified as "exceptional," presumably according to the definition contained in Section 13–1371 of the Public School Code, 24 P.S. § 13–1371.

2. In their opinions, both the trial court and the Commonwealth Court incorrectly stated that Reed Street has two driving lanes. Those statements are contradicted by Pearsall, the School District and the record presented.

roadway, the School Bus Manual directs the bus driver to remain in his seat, visually clear the roadway and signal to the student to cross. Here, on the day of the accident, the designated attendant failed to report for work.

Lee stopped the bus in the travel lane on Reed Street at the intersection of Reed and Taylor to allow Vernon to depart. Lee opened the door, leaving the motor running. By design, when the door opened, exterior warning lights flashed and a "side stop signal arm" swung from the side of the bus.

Vernon exited the bus. To reach his home, he was required to cross over the travel lane of Reed Street in front of the bus, then cross over the parking lane to Lee's left. Vernon started on this path, pausing in front of the bus for direction from Lee. Lee checked the rear-view mirrors and, observing no traffic, waved his hand to signal Vernon to cross. Lee was distracted momentarily; when he looked at the mirrors again, he saw the front of a car traveling in the parking lane along the left side of the bus. Lee tried unsuccessfully to warn Vernon, who did not see the car and stepped into its path. The car struck Vernon, carried him for over a block without slowing and ultimately ran over part of his body.

Under the Tort Claims Act, local governmental agencies generally are immune from tort liability.[3] 42 Pa.C.S. § 8541. This "governmental immunity," however, is not absolute. Section 8542 provides that an injured party may recover in tort from a local agency if: (1) damages would be otherwise recoverable under common law or statute, 42 Pa.C.S. § 8542(a)(1); (2) the injury was caused by the negligent act of the local agency or an employee acting within the scope of his official duties, 42 Pa.C.S. § 8542(a)(2); and (3) the negligent act of the local agency falls within one of eight enumerated categories. 42 Pa.C.S. § 8542(b). Among these excepted categories is the "operation of any motor vehicle in the possession or control of the local agency."[4] 42 Pa.C.S.

3. Pearsall does not dispute that the School District is a "local agency" for purposes of the Tort Claims Act.

4. Effective in September, 1995, the legislature amended Section 8542(b)(1) by adding language providing that the exception does not

§ 8542(b)(1). Because the legislature expressed its clear intent to insulate political subdivisions from tort claims, *Mascaro v. Youth Study Center*, 514 Pa. 351, 361, 523 A.2d 1118, 1123 (1987), we have held that Pennsylvania courts must apply narrowly the exceptions to governmental immunity, including this "motor vehicle" exception. *Id.; see also Love*, 518 Pa. at 373–74, 543 A.2d at 533.

In *Love*, this Court considered the breadth of the motor vehicle exception. In that case, an elderly plaintiff fell and suffered an injury while alighting from a parked van owned by the City of Philadelphia. The driver had stopped the engine, exited the van and placed a portable set of stairs at the passenger doorway. The plaintiff prevailed at trial in a civil action against the city, in which she contended that the driver had been negligent in placing the stairs. On appeal, this Court examined whether any act of "operation of [a] motor vehicle" resulted in the plaintiff's injury so as to defeat the city's claim to governmental immunity.

The Court began its analysis by noting that "we are constrained to strictly construe the crucial term, i.e. 'operation.'" *Love*, 518 Pa. at 374, 543 A.2d at 532. Because the term is not defined in the statute, the Court reviewed its common and approved usage in accordance with Section 1903 of the Statutory Construction Act, 1 Pa.C.S. § 1903, and concluded that:

> to operate something means to actually put it in motion. Merely preparing to operate a vehicle, or acts taken at the cessation of operating a vehicle are *not* the same as actually operating that vehicle.

*Love*, 518 Pa. at 375, 543 A.2d at 533. Applying this construction, the Court held that the motor vehicle exception was inapplicable, reasoning that the parked city van was not in operation at the time of the plaintiff's injury. The Court distinguished acts of "operation" of a vehicle from "ancillary" acts, concluding that "[g]etting into or alighting from a vehicle

operate in favor of one who suffers injury while fleeing (or aiding another in flight) from the police.

are merely acts ancillary to the actual operation of that vehicle." *Id.* at 375, 543 A.2d at 533.

Consistent with this Court's decision in *Love*, the Commonwealth Court generally has declined to apply the motor vehicle exception in cases where the act at issue was not directed toward causing physical movement of the vehicle. *See, e.g., Miller v. Erie Metro. Transit Auth.*, 152 Pa.Cmwlth. 64, 618 A.2d 1095 (1992) (holding that the motor vehicle exception was inapplicable where a bus passenger slipped on an object while alighting); *First National Bank of Pa. v. Commonwealth, Dep't of Transp.*, 148 Pa.Cmwlth. 158, 609 A.2d 911 (1992) (holding that a vehicle alleged to have been improperly parked on a roadway was not in "operation" for purposes of the motor vehicle exception); *Brelish v. Clarks Green Borough*, 146 Pa.Cmwlth. 232, 604 A.2d 1235 (1992) (finding local agency's failure to establish safe shool bus locations outside the motor vehicle exception).

Conversely, where an act causing movement of the vehicle or a part was directly connected with the injury at issue, the Commonwealth Court has found the exception applicable to defeat local agencies' claims of governmental immunity. *See, e.g., Sonnenberg v. Erie Metro. Transit Auth.*, 137 Pa.Cmwlth. 533, 586 A.2d 1026 (1991) (finding motor vehicle exception applicable where plaintiff was injured by the physical closing of a bus door). *Cf. Cacchione v. Wieczorek*, 674 A.2d 773 (Pa.Cmwlth.1996) (finding that local agency driver's act in failing to set handbrake when he exited a vehicle, resulting in the vehicle rolling backwards and causing property damage, constituted "operation"), *appeal denied*, 546 Pa. 684, 686 A.2d 1313 (1996).

In *Vogel v. Langer*, 131 Pa.Cmwlth. 236, 569 A.2d 1047 (1990), relied upon by the Commonwealth Court in this case, an automobile collided with a truck after the driver of a bus operated by the Southeastern Pennsylvania Transportation Authority ("SEPTA"), momentarily stopped in traffic, waved the automobile into an intersection, apparently by a hand signal. The driver of the automobile brought an action against SEPTA, alleging that the bus driver's action constitut-

ed negligence. The trial court granted summary judgment in favor of SEPTA, finding that the driver's act did not constitute the "operation of the vehicle" so as to fall within the motor vehicle exception to sovereign immunity. *See* 42 Pa. C.S. § 8522(b)(1).[5]

On appeal, the Commonwealth Court reversed. The court acknowledged *Love's* interpretation of the word "operation" as used in the motor vehicle exception, namely, that there must be actual movement. It distinguished *Love*, however, because the vehicle involved there was parked, whereas the bus in *Vogel* was merely stopped in traffic. Further, the court reasoned that operation of a motor vehicle entails communication with other drivers, stating that "[a] wave, horn beep, or the flashing of lights are common signals exchanged between motorists;" it concluded that "[t]emporarily stopping a vehicle and waving another motorist into an intersection are acts normally related to the operation of a vehicle." *Id.* at 239, 569 A.2d at 1048.[6]

In this case, Pearsall urges that we apply the reasoning of *Vogel* to encompass the bus driver's actions in attempting to clear Vernon White's path and signaling to him to cross the street. We decline, however, to extend the motor vehicle exception to the facts of this case. Here, quite clearly, the action complained of is not the physical operation of the school bus, but rather the driver's act of attempting to supervise the

5. The operative language of this provision of the Sovereign Immunity Act, 42 Pa.C.S. § 8521, *et seq.*, is identical to Section 8542(b)(1) of the Tort Claims Act, but applies to state rather than local agencies.

6. In *Lehman v. County of Lebanon, Transp. Auth.*, 143 Pa.Cmwlth. 416, 599 A.2d 259 (1991), a case involving a school bus, the Commonwealth Court declined to apply the motor vehicle exception in an action by a student who was struck by a vehicle while crossing a road immediately after alighting from the bus. Applying *Love*, the court reasoned that, "[i]f in the process of alighting from a vehicle, one cannot invoke the motor vehicle exception, then neither can a passenger ... who has already alighted from a vehicle and proceeded to cross toward her destination." *Id.* at 420, 599 A.2d at 261. It found *Vogel* inapplicable, because the plaintiffs made no allegation of the use of a hand signal, and because the bus stopped, not because of traffic, but to discharge passengers, an act distinct from the "operation" of a vehicle. *Id.* at 421, 599 A.2d at 262.

student to ensure his safety after he had alighted from the vehicle.

Pearsall argues that the fact that the School District implemented procedures to supervise students' safety after departing from school buses, as set out in the School Bus Manual, supports an expanded definition of "operation." This argument confuses duty with liability. While it may well be that a school district that transports students assumes an obligation to make reasonable efforts to see those students safely to their destinations, it does not necessarily follow that breach of that duty exposes the school district to liability in tort. Rather, the legislature has determined that, unless the conduct at issue falls within specifically stated exceptions, immunity attaches.

Because the motor vehicle exception is inapplicable in this case, the School District is entitled to judgment as a matter of law. Accordingly, the decision of the Commonwealth Court is reversed, and the matter is remanded for reinstatement of the summary judgment entered in favor of the School District.

ZAPPALA, J., files a Concurring Opinion.

NIGRO, J., files a Dissenting Opinion in which CAPPY and NEWMAN, JJ., join.

ZAPPALA, Justice, concurring.

I join in the Majority Opinion. I write separately to note that rather than distinguish *Vogel v. Langer*, 131 Pa.Cmwlth. 236, 569 A.2d 1047 (1990), I would hold that *Vogel* is not to be followed because it was wrongly decided.

NIGRO, Justice, dissenting.

I dissent from the majority's conclusion that the School District is immune from liability in this case. The School District's alleged negligence with respect to the operation of its motor vehicle falls squarely within the motor vehicle exception to governmental immunity.

Under the Political Subdivision Tort Claims Act, the School District is not immune from liability if Appellees' damages would be recoverable from a person without an immunity defense and their injuries were caused by the School District's negligent acts with respect to the operation of a motor vehicle in its possession or control. *See* 42 Pa. Cons.Stat. § 8542(a),(b)(1)(setting forth the exceptions to governmental immunity).

The issue raised here is whether the School District was allegedly negligent with respect to the operation of a motor vehicle. The Court addressed when an agency "operates" a vehicle for purposes of governmental immunity in *Love v. City of Philadelphia*, 518 Pa. 370, 543 A.2d 531 (1988). In *Love*, the plaintiff required help boarding and exiting a City-owned van that transported her to an adult center run by the City. The driver typically parked the van, placed a portable step at the van door, and assisted the plaintiff in and out. The plaintiff fell one afternoon when exiting the van.

In considering whether the motor vehicle exception to governmental immunity applied to the plaintiff's subsequent lawsuit, the Court strictly construed the term "operation" in accordance with its common usage and held that it means putting a vehicle in motion. *Id.* at 375, 543 A.2d at 533. Since the van was parked and thus not in operation when the plaintiff exited, the City was immune from suit. *Id.*

Consistent with *Love*, the Commonwealth Court held in *Vogel v. Langer, et al.*, 131 Pa. Commw. 236, 569 A.2d 1047 (1990), that the motor vehicle exception applied where a transit authority bus driver waved another motorist into an intersection and allegedly caused an accident. In *Vogel*, a car and a truck collided at an intersection after a municipal bus driver, who was stopped in traffic at the intersection, signaled to the truck driver with his hand to proceed into the intersection. The court held that the motor vehicle exception to immunity applied since the bus driver was not parked and had only momentarily stopped the bus in traffic. *Id.* at 239, 569 A.2d at 1048. The court stated that the operation of a motor vehicle entails temporary stops and communication with other

drivers. *Id.* It found signals like waving to be acts normally related to the operation of a vehicle. *Id.*[1]

Similarly, an accident occurred in the present case after the School District's bus driver, while temporarily stopped on the roadway with the motor running, checked his mirrors and then waved to Vernon White, who had alighted from the bus, to cross the street. Like in *Vogel,* the driver's actions were normally related to the operation of the bus. Along with using mirrors and checking traffic, the Pennsylvania School Bus Driver's Manual requires drivers to give a signal to alighted passengers. As recognized by the Commonwealth Court, whether a signal is to a motorist as in *Vogel,* or a pedestrian as in this case, is a distinction without a difference. Both acts are integral to the operation of a motor vehicle.

The majority apparently accepts the Commonwealth Court's decision in *Vogel* but declines to apply it to the similar facts of this case. The majority does not explain, however, how a driver's signal to a pedestrian while driving is any less integral to the operation of the vehicle than a driver's signal to another motorist.[2]

Consistent with *Vogel,* the Commonwealth Court properly held that the School District is not immune from liability. This result is also consistent with a recent decision of this Court recognizing that the plain language of the motor vehicle exception encompasses negligent acts related to the operation of a vehicle. *See Mickle v. City of Philadelphia,* 550 Pa. 539, 707 A.2d 1124 (1998) (City not immune where plaintiff was

1. *Vogel* involved the Sovereign Immunity Act, which similar to the Political Subdivision Tort Claims Act, provides that Commonwealth agencies are not immune from claims for damages caused by the operation of a motor vehicle in the possession or control of a Commonwealth party. *See* 42 Pa. Cons.Stat. § 8522(b)(1).

2. In an unpersuasive attempt to distinguish *Vogel,* the majority states that the action complained of here is not the physical operation of the bus but rather the driver's act of attempting to supervise the student after he alighted. To the contrary, Appellees argue that while operating his vehicle, the bus driver negligently checked his mirrors and waved Vernon White into the path of an oncoming car.

injured while riding in a City-owned vehicle due to negligent maintenance of the vehicle). For these reasons, I dissent.

CAPPY and NEWMAN, JJ., join in the dissenting opinion.